IN THE CIRCUIT COURT OF THE 7TH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO.:

EULA MAE LEACH, an individual,

        Plaintiff,

v.

SANTANDER CONSUMER USA, INC.,
an Illinois corporation,

        Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Eula Mae Leach, an individual ("Ms. Leach"), sues Defendant, Santander Consumer USA, Inc., an Illinois corporation ("Santander"), and alleges:

### *INTRODUCTION*

1.      This lawsuit is about a large national lender which took the only transportation of an elderly and infirmed woman without good cause or justification after botching the servicing of her car loan.

2.      As detailed below, Santander initially informed Ms. Leach that her car had been paid off – presumably because of a nationwide attorney general proceeding- only to later inform Ms. Leach that the "pay-off" was an error and demand payment. After placing Ms. Leach in the unenviable position of not being able to bring her car loan current, Santander agreed to let Ms. Leach reinstate her loan with the unpaid installments being placed at the end of the loan term. Unfortunately, Santander forgot its agreement with Ms. Leach and took her vehicle without good cause or justification.

3.     The genesis of the cascading mistake by Santander was a May 19, 2020 settlement between Santander and a coalition of thirty-four attorney generals ("National AG Settlement") to provide redress for the predatory lending practices of Santander.

4.     As part of the National AG Settlement, the Office of the Attorney General, State of Florida ("Florida AG") brought an action against Santander in that certain case styled "*Office of the Attorney General, etc. v. Santander Consumer USA, Inc.,* In the Circuit Court, 13th Judicial Circuit, in and for Hillsborough County, Florida; Case No. 20-CA-004225" ("Florida AG Proceeding").

5.     On May 15, 2020, the Court having jurisdiction of the Florida AG Proceeding entered a Final Consent Judgment ("Enforcement Order").

6.     A copy of the Enforcement Order is attached hereto as Exhibit "A."

7.     As with the other settlements in the National AG Settlement, the Enforcement Order provided benefits for various sub-prime borrowers, including waivers of deficiencies, forgiveness of loans, and -- for certain consumers— clear title to vehicles.

8.     Despite the laudable intentions of the National AG Settlement, the information concerning the identity of the consumers who would receive benefits under the settlement has been a closely guarded secret. As a salient example, the disclosures to consumers on the website created for the National AG Settlement at *https://santandermultistateagsettlement.com* ("AG Settlement Website") provide *inter alia*:

> **Consumers may be eligible for the following types of relief:**
> 1. **Restitution**: Santander must pay $65 million in restitution to be divided amongst the33 states and the District of Columbia. Over 265,000 consumers across the settlement states will be eligible for this restitution.
> a. **Who qualifies?** You must have a gotten a loan with Santander between January 1,2010 and December 31, 2019 and Santander must have given you a **certain internal score at the time you got the loan. Consumers will NOT know their own internal score. Additionally, neither states nor the settlement administrator know consumers' internal scores**. This is why consumers will have to wait for notice from the settlement administrator …

(boldface added by Plaintiff)

9.      As seen above, whether a person qualifies for restitution and benefits is based on a "certain internal score" that neither consumers nor even the various attorney generals are privy to.

10.      This lack of transparency has not gone unnoticed by consumers and their advocates. *See*, "*I Feel Robbed: Clients Await Compensation from Santander's $550 Million Settlement with States*," Law.com (June 23, 2020).

11.      As discussed below, with respect to Ms. Leach, Santander apparently treated her as a member of the group of beneficiaries of the Florida AG Settlement and then subsequently claimed that Santander had erred in cancelling her loan. Compounding the error, Santander repossessed Ms. Leach's car – even after Ms. Leach agreed to continue making payments.

12.      After retaining counsel, Ms. Leach now has learned that she had also been cheated by the dealership that sold her the car, Stoff Motor Company, doing business as "Family Kia" ("Family Kia" or "Dealership"). As more particularly described below, Family Kia fraudulently sold Ms. Leach a daily rental car in violation of federal and state law.

### *ALLEGATIONS AS TO PARTIES*

13.      At all times material hereto, Ms. Leach was *sui juris* and a resident of St. Johns

County, Florida.

14.     At all times material hereto, Ms. Leach was a "senior citizen" and a "handicapped person" as said terms are defined under Fla. Stat. §520.2077(1)(a) and (b).

15.     At all times material hereto, Santander was an Illinois corporation doing business in St. Johns County, Florida.

16.     At all times material hereto, Santander was engaged in the business of a "sales finance company" as said term is defined under Fla. Stat. §520.02(19).

17.     At all times material hereto, Family Kia was a "dealer" as said term is defined under Fla. Stat. §520.77(a).

18.     At all times material hereto, Family Kia was a "motor vehicle retail installment seller" or "seller" as said terms are defined under Fla. Stat. §520.02(11).

19.     Pursuant to 16 C.F.R. §433, known more commonly as the "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or "FTC Holder Rule," Santander is subject to all claims and defenses of Ms. Leach as a consumer which are available against the credit-seller, to-wit: Family Kia.

### *FACTUAL ALLEGATIONS*

### *A.  Purchase of Kia by Ms. Leach*

20.     Ms. Leach is a 67-year-old African American woman who suffers from a host of dehabilitating health problems, including severe kidney disease. Her life activities are limited by dialysis treatment three times a week.

21.     Because of her age and health, Ms. Leach survives on social security. As a result of her modest circumstances, the only asset of Ms. Leach was the car which is the subject matter of this lawsuit.

22.     In the Spring, 2018, Ms. Leach discerned that her 2006 Mercury Mariner ("Trade-in Vehicle") was beginning to fail and would need expensive repairs that Ms. Leach could not afford.

23.     As she needed reliable transportation to take her to doctors, Ms. Leach went to Family Kia to look for a replacement vehicle with the intent of using the Trade-in Vehicle as part of the down payment.

24.     The Dealership showed Ms. Leach various vehicles, including a used 2017 Kia Soul, VIN: ██████████1017 ("Kia").

25.     On or about April 19, 2018, Ms. Leach entered into a retail installment sale contract with Family Kia ("Leach RISC") to purchase the Kia.

26.     A true and correct copy of the Leach RISC is attached hereto and incorporated herein as Exhibit "B."

27.     Pursuant to the Leach RISC, Ms. Leach financed the purchase of the Kia for her personal, family and household purposes.

28.     After the purchase of the Kia, the Leach RISC was assigned to Santander under unknown terms and for unknown consideration.

### B.   "Pay-off" of Auto Loan

29.     Since entering into the Leach RISC, despite being a woman of profoundly modest means, Ms. Leach faithfully paid all installment payments due thereunder to Santander.

30.     On June 4, 2020, Santander sent or caused to be sent to Ms. Leach a letter concerning the Leach RISC ("Paid in Full Letter").

31.     A true and correct copy of the Paid in Full Letter is attached hereto and incorporated by reference as Exhibit "C."

32.    Pursuant to the Payment in Full Letter, Santander represented the following:

To Whom It May Concern:

Santander Consumer USA Inc. recognizes the above referenced account as paid in full on 5/15/2020, subject to a final reconciliation and accounting.

We will take the necessary steps to update our records with the payoff.  Please allow up to thirty (30) days for all updates to be reflected with the credit reporting agencies. If you have any questions, please contact us at 888-222-4227.

If you purchased credit insurance or any other ancillary product (i.e., GAP) in connection with the purchase of your vehicle, you may be entitled to a refund of unearned premiums.  Please contact the original seller for details about recovering unearned premiums for credit insurance or any other ancillary product.

33.    After reading the Paid in Full Letter, Ms. Leach was dumbfounded as she had not paid her loan off.

34.    In addition to the Paid in Full Letter, Ms. Leach received from Santander a document entitled "Power of Attorney Instruction Letter" ("Title Transfer Letter").

35.    A true and correct copy of the Title Transfer Letter is attached hereto and incorporated by reference as Exhibit "D."

36.    Pursuant to the Title Transfer Letter, Santander informed Ms. Leach that it "*need[ed] a power of attorney to obtain a duplicate title on [Ms. Leach's] behalf.*"

37.    Not knowing what was going on, Ms. Leach called Santander.

38.    Despite several attempts, Ms. Leach was unable to speak to anyone about her account or the meaning of the Paid in Full Letter.[1]

39.    As Ms. Leach did not know why her loan was paid off, Ms. Leach continued making payments to Santander for June and July.

---

[1]  By information and belief, the inability of Ms. Leach to speak to someone with knowledge was because of the heightened call volume after the National AG Settlement with persons calling into to Santander seeking information on their loan.

40.    Santander returned her monthly payments.

*C. Deferment Agreement After Discovery of "Mistake"*

41.    With the returned payments, Ms. Leach acquiesced to the position of Santander that the car loan was paid off.  After all, if the loan remained unpaid, Santander would contact her.

42.    Santander did eventually contact Ms. Leach.

43.    In the late summer, Santander notified Ms. Leach that her loan was in arrearages.

44.    In her subsequent telephone discussion with Santander, Ms. Leach learned from a collections representative that Santander had "*made an error*" in posting a payoff of some unidentified man's account to that of Ms. Leach.[2]

45.    The representative told Ms. Leach that her account was severely in arrears.

46.    Ms. Leach became upset.

47.    Ms. Leach explained to the representative that because of the Pay-off Letter and the rejection of her payments she had assumed that her account was paid off.

48.    Ms. Leach told the representative she only received social security and that the money that she would have used to pay her car loan went to pay other bills that had accumulated.

49.    Ms. Leach told the representative that she had no money and was unable to get the loan current.

50.    Ms. Leach became distraught and struggled to hold back tears.

51.    Hearing the panic in Ms Leach's voice, the representative acknowledged that Santander had caused the problem and offered a solution.

52.    The representative agreed to allow the missing payments to be put on the end of the

---

[2] The date of the Payoff Letter was May 15, 2020- the same day as the Fla. AG Settlement. Accordingly, irrespective of the purported "error," it is assumed that the Payoff Letter was predicated by the Fla. AG Settlement.

loan provided Ms. Leach resume making her monthly payments starting in October ("Loan Deferment Agreement").

53.    Ms. Leach was relieved as she depended on her car to take her to dialysis every other day.

54.    As Ms. Leach had cause to question the record keeping of Santander, Ms. Leach asked the representative to make sure the account showed the deferment.

55.    The representative stated that the account would show that the missing payments would be placed on the end of the loan.

56.    Ms. Leach again asked the representative whether the Kia was in any danger of being repossessed.

57.    The representative assured her that the Kia was safe from repossession.

58.    Ms. Leach ended the call in the happy belief that her car would not be taken and that the snafu- caused solely by the ineptitude of Santander- was behind her.

59.    Ms. Leach resumed payments to Santander for the months of October and November.

### D. Taking of Vehicle Without Cause or Justification

#### 1. Unreasonable Repossession in the Absence of Default

60.    On Monday, December 7, 2020, Santander repossessed or caused the repossession of the Kia from her home in St. Augustine, Florida.

61.    The repossession was without notice to Ms. Leach.

62.    After repossession, Santander sent or caused to be sent a letter dated December 7, 2020 entitled "Notice of Our Plan to Sell Property" ("Notice of Sale").

63.    A true and correct copy of the Notice of Sale is attached as Exhibit "E."

64.     Pursuant to the Notice of Sale, Santander also falsely represented to Ms. Leach that she "*broke promises in our agreement*."

65.     The taking of the Kia was in the absence of a default under the Leach RISC.

66.     The taking of the Kia caused Ms. Leach great emotional harm.

67.     The repossession of the Kia left Ms. Leach unable to travel to her medical appointments and placed her in the difficult position of having to rely upon public transportation and rides from family and friends, with all the attendant risks of COVID-19 exposure.

68.     The consumer transaction represented by the Leach RISC is subject to the requirements of Chapter 679, Uniform Commercial Code ("UCC").

69.     Fla. Stat. §679.609 provides that a secured party has a right to take possession of collateral only after default.

70.     As Ms. Leach was not in default in payment of the Leach RISC as modified, Santander did not have the right to take possession of the Kia after default pursuant to Fla. Stat. §679.609.

### 2.  Ms. Leach Learns of Santander AG Settlement

71.     After the repossession, Ms. Leach learned about the Santander AG Settlement, including the agreement of Santander to forgive car loans and to provide clear titles to certain consumers.

72.     In the fullness of time, Ms. Leach reviewed a website about the Santander AG Settlement at *https://santandermultistateagsettlement.com* ("AG Settlement Website").

73.     The following is a screenshot of the AG Settlement Website's information concerning the discharge of auto loans:

(Remainder of page left intentionally blank)



("Loan Forgiveness Disclosure")

74.    After learning of the Santander AG Settlement, Ms. Leach – an unsophisticated

senior citizen with severe health issues- was in an utter fog. To compound her confusion, the AG

Settlement Website offered no information to aid a consumer to even learn whether he or she was an intended beneficiary of the AG Settlement.[3]

### E. Uncovering of Misconduct

#### 1. As to Family Kia

75.    To guide her out of the confusion, on October 15, 2020, Ms. Leach retained counsel to recover the Kia and vindicate her rights.

76.    As part of due diligence in preparing the instant Complaint, Ms. Leach through counsel obtained the title history for the Kia from the Florida Department of Highway Safety and Motor Vehicles ("Fla. DMV").

77.    A true and correct copy of the title history for the Kia ("Kia Title History") is attached hereto and incorporated herein by reference as Exhibit "F."

78.    At the time of purchase of the Kia, the Kia had been previously titled in the name of PV Holding Corp., a subsidiary of Avis Budget Group, Inc. ("Avis"), and had been used in a rental car fleet under short term leases since the acquisition of the Kia by Avis.

79.    The Dealership acquired ownership of the Kia from Avis under a Pennsylvania title issued in the name of Avis ("Daily Rental Title").

80.    The Daily Rental Title was not shown to Ms. Leach at any time by the Dealership and Ms. Leach did not execute same as transferee of the vehicle.

81.    Instead of complying with the requirements of Florida and federal law, the Dealership required Ms. Leach to sign a power of attorney, an odometer disclosure statement, a

---

[3] Because the objective criteria for obtaining benefits is not public, Ms. Leach has no way of knowing if she is one of the fortunate consumers. But in so far as the car loan had a 17.9% APR and a 72-month term, Ms. Leach- a woman on social security- has cause to believe she should be.

motor vehicle dealer title reassignment supplement, and an application for certificate of title (hereinafter referred to collectively as the "Transfer Forms"), which did not disclose the designation of the vehicle as a daily rental. Through this tactic, the Dealership was able to affix the name of Ms. Leach to the title certificate and avoid disclosing the prior history of the Kia.

82.    A true and correct copy of the Transfer Forms are attached hereto as Composite Exhibit "G."

83.    Through the Transfer Forms, the Dealership made the following additional false representation of the prior history of the Kia:

| 3 | BRANDS, USAGE AND TYPE (Check Applicable Boxes) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ SHORT TERM LEASE ☐ ASSEMBLED FROM PARTS | ☐ LONG TERM LEASE ☐ BONDED TITLE | ☐ REBUILT ☐ KIT CAR | ☐ POLICE VEHICLE ☐ GLIDER KIT | ☒ PRIVATE USE ☐ MANUF. BUY BACK | ☐ TAXI CAB ☐ REPLICA | ☐ FLOOD ☐ AUTONOMOUS | ☐ ILEV ☐ ELECTRIC | ☐ CUSTOM ☐ STREET ROD |
| 4 | LIENHOLDER INFORMATION | | | | | | | |

("Prior Use Representation")

84.    At the time of her purchase of the Kia, Ms. Leach executed and delivered to the Dealership a "Retail Purchase Agreement" ("Retail Buyer's Order").

85.    A copy of the Retail Buyer's Order is attached hereto and incorporated herein by reference as Exhibit "H."

86.    Through the Retail Buyer's Order, the Dealership **affirmatively** represented in writing that the Kia was not a daily rental car:

| YEAR 2017 | MAKE KIA | | MODEL SOUL | COLOR DARK_GRAY | STOCK NO. P7885 |
|---|---|---|---|---|---|
| VIN/SERIAL NO. ████1017 | | ODOMETER READING ☐ Not Accurate    39815 | | SALESPERSON DEBBIE STEARLEY | |
| THE VEHICLE IS: ☐ NEW  ☒ USED | PRIOR USE DISCLOSURE: ☐ DEMONSTRATOR  ☐ PREVIOUSLY LEASED  ☐ EXECUTIVE VEHICLE  ☐ RENTAL  ☐ OTHER | | | | |
| | WARRANTY STATEMENT | | | CASH PRICE OF VEHICLE | |

("Daily Rental Representation")

87.    At no time did the Dealership disclose to Ms. Leach that the Kia had been used as rental cars.

88.    If the Dealership had disclosed to Ms. Leach that the Kia had been previously used as a rental car, Ms. Leach would not have agreed to purchase the Kia.

*2. As to Santander Compliance with Enforcement Order*

89.    The Enforcement Order was to redress systematic misconduct on the part of Santander with respect to its servicing of consumer loans. Among the ills addressed was the long-standing practice of Santander miscommunicating the terms and consequences of loan deferments and reinstatements.

90.    The Enforcement Order directed *inter alia* the following with respect to future auto loan servicing by Santander:

> m. Santander shall maintain policies and procedures with respect to deferments, forbearances, modifications, and other related servicing and collection matters, and ensure that these policies and procedures are followed by its employees.
> n. Santander shall not misrepresent a Consumer's prospect of redeeming a vehicle that has been repossessed.
> o. Santander shall clearly and prominently disclose during enrollment calls, on its extension authorization forms, and on extension confirmation letters the following material terms of an extension: (i) the effect of an extension on a Consumer's Loan maturity date, (ii) the application of payments between interest and principal when the Consumer resumes making payments, and (iii) that the extension may delay repayment of principal, resulting in more interest accruing over the life of the Loan than if the Consumer had not entered into the extension.
> p. Santander shall clearly and prominently disclose during enrollment calls, on written extension authorization forms, and on extension confirmation letters that the interest accruing during the extension period becomes immediately due when the Consumer resumes making payments….

("Defaulted Loan Servicing Provision)
(Enforcement Order- p 11-12; footnote omitted)

91.    As seen above, with respect to the loan of Ms. Leach, Santander completely failed to comply with the Defaulted Loan Servicing Provision of the Enforcement Order.

## COUNT I - ACTION FOR VIOLATION OF ARTICLE 9, PART VI OF U.C.C.

92.     This is an action for violation of Article 9, Part VI of the UCC, seeking damages in excess of Thirty Thousand Dollars ($30,000), exclusive of interest, costs and attorney's fees.

93.     Ms. Leach realleges and reaffirms the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

94.     At all times material hereto, the Kia was a "consumer good" as said term is defined under Fla. Stat. §679.1021 (1)(w), UCC.

95.     The taking of the Kia in the absence of a default by Ms. Leach was contrary to the requirements of Fla. Stat. §679.609.

96.     Pursuant to Fla. Stat. §679.610, every aspect of the disposition of collateral, including the method, manner, time, place and other terms must be commercially reasonable.

97.     The taking of the Kia was not commercially reasonable.

98.     As a direct and proximate result of the conduct of Santander in repossessing the Kia, Santander has violated the default procedures set forth under Article 9, Part 6, of the UCC.

99.     As a direct and proximate result of the violation of the default procedures of the UCC by Santander, Plaintiff has the right to recover damages for any loss caused by the failure of Santander to comply with the provisions of the UCC, in any event in an amount not less than the credit service charge plus ten percent (10%) of the principal amount of the debt or the time-price differential plus ten percent (10%) of the cash price as set forth under Fla. Stat. 679.625(3)(b).

100.    Plaintiff has employed the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment in her favor against Defendant, Santander Consumer USA, Inc., an Illinois corporation, for damages, together

with interest, court costs and attorney's fees pursuant to Fla. Stat. §57.105(7).

## COUNT II - ACTION FOR EQUITABLE RELIEF (U.C.C.)

101.     This is an action for equitable relief pursuant to Fla. Stat. §679.625, UCC, involving an amount in controversy in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

102.     Ms. Leach realleges and reaffirms the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

103.     As detailed above, Santander has acted wrongfully with respect to the taking of collateral represented by the Kia in the absence of a default by Ms. Leach under the Leach RISC.

104.     Pursuant to Fla. Stat. §679.625, if it is established that a secured party is not proceeding in accordance with Article 9, Part VI of the UCC, the court may enter an order restraining collection, enforcement or disposition of collateral of appropriate terms and conditions.

105.     Ms. Leach does not have an adequate remedy at law with respect to the disposition of the Kia.

106.     Ms. Leach will suffer irreparable injury if Santander is not enjoined from disposing of the Kia.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, respectfully moves this Court for an order enjoining Defendant, Santander Consumer USA, Inc., an Illinois corporation, from disposing of the Kia or acting in a manner contrary to the requirements of the Uniform Commercial Code with respect to the disposition of same.

## COUNT III - ACTION FOR EQUITABLE RELIEF (COMMON LAW)

107.     This is an action for common law equitable relief involving an amount in controversy in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

108. Ms. Leach realleges and reaffirms the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

109. As detailed above, Santander repossessed the Kia without good cause or justification and contrary to the requirements of the UCC.

110. Ms. Leach does not have an adequate remedy at law with respect to the intended sale of the Kia.

111. Ms. Leach will suffer irreparable injury if Santander is allowed to the sell the Kia.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment for injunctive relief, both temporary and permanent, against Defendant, Santander Consumer USA, Inc., an Illinois corporation, and for such other and further relief as justice may require.

## COUNT IV - ACTION FOR VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT

112. This is an action for violation of Fla. Stat. Ch. 559, *et seq.*, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA"), seeking damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest, costs and attorney's fees.

113. Ms. Leach realleges and reaffirms the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

114. At all times material hereto, any monies purportedly owed under the Leach RISC constituted a "debt" or "consumer debt" as defined under Fla. Stat. §559.55(1).

115. At all times material hereto, Ms. Leach was a "debtor" or a "consumer debtor" as defined under Fla. Stat. §559.55(2).

116. At all times material hereto, Santander was a "creditor" as defined under Fla. Stat. §559.55(3).

117. As more particularly described above, Santander has violated the FCCPA in the

following respects:

    A.    Willfully engaged in conduct which can reasonably be expected to abuse or harass Ms. Leach as a debtor in contravention of Fla. Stat. §559.72(7); and

    B.    Asserted the existence of a legal right, to-wit: the right to seize the Kia and demand payment of the balance of the Leach RISC, when Santander knew that the right did not exist.

118.    As a direct and proximate result of the violation of the FCCPA by Santander, Ms. Leach is entitled to recover actual and statutory damages, attorney's fees and court costs pursuant to Fla. Stat. §559.72.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment for damages against Defendant, Santander Consumer USA, Inc., an Illinois corporation, together with attorney's fees and costs.

## COUNT V - ACTION FOR TRESPASS TO CHATTELS

119.    This is an action for trespass to chattels seeking damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

120.    Ms. Leach realleges and reaffirms the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

121.    At all times material hereto, Ms. Leach had legal and equitable ownership and lawful possession of the Kia at the time of the taking by Santander.

122.    Santander interfered with the exclusive right to possession of Ms. Leach of the Kia by repossessing the Kia without the authority of law.

123.    Santander intended to perform the acts that amounted to the unlawful interference with the personal property of Ms. Leach.

124.    Santander had no legal authority or right to commit the act that amounted to the unlawful interference with the personal property of Ms. Leach.

125.    As a result of the above-described trespass to the chattel of Ms. Leach, Ms. Leach has been damaged. The damages of Ms. Leach include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation, embarrassment, as well as loss of the use of the Kia same was in the possession of Defendant.

126.    The actions of Santander were in wanton and reckless disregard for the rights of others to the extent that punitive damages are warranted.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment against Defendant, Santander Consumer USA, Inc., an Illinois corporation, for actual and punitive damages, together with interest and court costs.

## COUNT VI - ACTION FOR VIOLATION OF THE
## FEDERAL ODOMETER ACT

127.    This is an action for violation of the Federal Odometer Act, formerly known as Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §32701, *et seq.* (hereinafter "the Odometer Act") seeking damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest, costs and attorney's fees.

128.    Ms. Leach reaffirms and realleges the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

129.    At all times material hereto, Ms. Leach was a "transferee" as said term is defined under 49 C.F.R. §580.30.

130.    At all times material, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2), and a "transferor" as defined by 49 C.F.R. §580.30.

131.    At all times material hereto, the Kia was a "motor vehicle" as said term is defined under 49 U.S.C. §32101(7).

132.    The Transfer Forms were not the secured forms issued by the State of Florida and did not contain the disclosures required by the Act.

133.    The Dealership failed to provide Ms. Leach with the actual title certificate for her examination and signature as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

134.    The Dealership intentionally manipulated title procedures, both to mislead Ms. Leach and to serve its own ends, to-wit: the sale of a daily rental car. *See, Owens v. Samkle Automotive, Inc.*, 425 F. 3rd 1318 (11th Cir. 2015).

135.    As an experienced motor vehicle dealer, the Dealership knew or should have known of the Act and its regulatory requirements regarding disclosures, and deliberately and recklessly disregarded what the law required.

136.    The Dealership deliberately deceived Ms. Leach through the oral and written misrepresentations and non-disclosures referred to above.

137.    The Dealership has violated the Act in that the Dealership made a false statement to a transferee in violation of 49 U.S.C. §32705(a) and 49 C.F.R. §580.4.

138.    The Dealership violated the Act with the specific intent to defraud.

139.    As a direct and proximate result of the violations of the Act, the Dealership is liable to Ms. Leach in the sum of three times her actual damages or $10,000, whichever is greater.

140.    Ms. Leach has retained the undersigned counsel to represent her interest herein and is obligated to pay said counsel a reasonable fee for his services.

141.    Pursuant to 49 U.S.C. §32710(b), Ms. Leach is entitled to recover her reasonable attorney's fees and court costs upon entry of judgment in her favor.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment in her favor against Defendant, Santander Consumer USA, Inc., an Illinois corporation, for damages, together with interest, court costs and attorney's fees pursuant to 49 U.S.C. §32710(b).

## COUNT VII - ACTION FOR VIOLATION OF
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

142.    This is an action for violation of Florida Statute §501.201, *et seq.,* known more commonly as the "Florida Deceptive and Unfair Trade Practices Act" (the "DUTPA"), seeking damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and attorney=s fees.

143.    Ms. Leach realleges and reaffirms the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

144.    At all times material hereto, Ms. Leach was an "interested party or person" as said term is defined under Fla. Stat. §501.203(6).

145.    At all times material hereto, the Kia was previously used prior to the sale to Ms. Leach by the Dealership as a "short-term lease" vehicle, as said term is defined under Fla. Stat. §319.14(1)(c)2a.

146.    At all times material hereto, the Kia was a "motor vehicle" and "used motor vehicle" as said terms are defined under Fla. Stat. §320.01(1) and §319.001(11), respectively.

147.    By virtue of the acts described above, the Dealership was engaged in "trade or commerce" as said term is defined under Fla. Stat. §501.203(8).

### ***Violation of Florida Title Certificate Act***

148.    During the course of the sale and financing of the Kia, the Dealership violated the requirements of Florida Statutes Chapter 319, known more commonly as the "Florida Title Certificate Act," in the following respects:

A.   By knowingly selling, exchanging or transferring the Kia without, prior to consummating the sale, exchange or transfer, disclosing in writing to Ms. Leach as a purchaser, customer or transferee, the fact that the Kia had previously been titled or used as a short-term lease vehicle in violation of Fla. Stat. §319.14(2); and

B.   By signing an odometer disclosure statement as both the transferor and the transferee for the same transaction in violation of Fla. Stat. §319.225(5).

149.   The violation of the Florida Title Certificate Act is a *per se* violation of the DUTPA under Fla. Stat. §501.211(3)(c).

### *Violation of Florida Motor Vehicle License Act*

150.   During the course of the sale and financing of the Kia, the Dealership violated the requirements of Fla. Stat. Chp. 320, known more commonly as the "Florida Motor Vehicle License Act," in the following respects:

A.   By misrepresenting or making false, deceptive or misleading statements with regard to the sale of the vehicle in violation of Fla. Stat. §320.27(b)3; and

B.   By perpetrating any fraud upon Ms. Leach in connection with the sale of the vehicle in violation of Fla. Stat. §320.27(9)(b)13.

151.   The violation of the Florida Vehicle License Act is a *per se* violation of the DUTPA pursuant to Fla. Stat. §501.211(3)(c).

### *Violation of DUTPA as Vehicles*

152.   At all times material hereto, Ms. Leach was a "customer" as said term is defined under Fla. Stat. §501.975(1).

153.   At all times material hereto, the Dealership was a "dealer" as said term is defined under Fla. Stat. §501.975(2).

154.   At all times material hereto, the Kia was a "vehicle" as said term is defined under Fla. Stat. §501.975(5).

155.   During the course of the sale and financing of the Kia, the Dealership violated the requirements of the DUTPA as to the Kia in the following respects:

A.    By misrepresenting the previous usage or status of the vehicle to be something that it was not or making usage or status representations unless the Dealership has correct information regarding the history of the Kia to support the representations in violation of Florida Statute §501.976(3); and

B.    By breaching express warranty as to the status of the Kia with respect to not being a daily rental vehicle in contravention of Florida Statute §501.976(7).

\*                    \*                    \*

156.   As a direct and proximate result of the violation of the DUTPA, Ms. Leach has been damaged and is an aggrieved person under the DUTPA. The actual economic damages of Ms. Leach include but are not necessarily limited to the diminution in value of the Kia as a result of its status as a daily rental vehicle.

157.   As more particularly described above, the Dealership has engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. §501.204(1).

158.   Ms. Leach has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment against Defendant, Santander Consumer USA, Inc., an Illinois corporation, for:

A.    Damages in an amount to be determined at trial; and

B.    Attorney's fees and court costs pursuant to Fla. Stat. §501.2105.

## COUNT VIII - ACTION FOR FRAUD

159.    This is an action for a claim for damages for common law fraud seeking damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

160.    Ms. Leach realleges and reaffirms the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

161.    As more particularly described above, the Dealership misrepresented material facts concerning the history of the Kia.

162.    The Dealership omitted material facts by failing to disclose that the Kia had been previously used as a rental car.

163.    The Dealership knew that the representations above were false, or made such representations recklessly, when the Dealership had no reasonable grounds for believing those representations were true.

164.    The Dealership knew that the omissions concerning the Kia were material and important.

165.    The Dealership intended to deceive Ms. Leach, and Ms. Leach relied upon the misrepresentations and omissions to her detriment.

166.    As a direct and proximate result of the fraud and non-disclosures by the Dealership, Ms. Leach has been damaged. The actual economic damages of Ms. Leach include but are not

necessarily limited to the diminution in value of the Kia as a result of its status as a daily rental vehicle.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment for damages against Defendant, Santander Consumer USA, Inc., an Illinois corporation, together with costs.

## COUNT IX- ACTION FOR FRAUDULENT INDUCEMENT

167.    This is a claim for fraudulent inducement seeking damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

168.    Ms. Leach realleges and reaffirms the allegations contained in Paragraph 1 through 91 above as if set forth hereat in full.

169.    The Dealership induced Ms. Leach into purchasing and financing the Kia by knowingly making misrepresentations of material fact and omitting material facts with the intent that Ms. Leach rely on them to her detriment.

170.    The Dealership's misrepresentations of material fact and omissions of material fact were made and omitted with the intent that Ms. Leach rely on them or be deceived by them to her detriment.

171.    Ms. Leach justifiably relied upon the misrepresentations and omissions to her detriment, and further, had Ms. Leach been advised of the truth, Ms. Leach would not have purchased the Kia.

172.    The actual and economic damages of Ms. Leach include but are not necessarily limited to the diminution in value of the Kia as a result of its status as a daily rental vehicle.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment against Defendant, Santander Consumer USA, Inc., an Illinois corporation, for damages, together with interest and costs.

## <u>COUNT X - ACTION FOR NEGLIGENT MISREPRESENTATION</u>

173.    This is an action for negligent misrepresentation seeking damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest.

174.    Ms. Leach realleges and reaffirms the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

175.    As more particularly described above, the Dealership misrepresented and failed to disclose material facts that the Kia had been previously used as a rental car.

176.    The Dealership believed the above statements to be true, but which were in fact false.

177.    The Dealership was negligent in making the statements concerning the history of the Kia and the omissions above and the Dealership should have known the statements were false.

178.    The Dealership, in making the statements concerning the history of the Kia, intended that Ms. Leach rely upon said statements.

179.    Ms. Leach justifiably relied on the false statements concerning the Kia at the time of her purchase of the Kia.

180.    As a direct and proximate result of the negligent misrepresentation by the Dealership, Ms. Leach has been damaged. The actual economic damages of Ms. Leach include but are not necessarily limited to the diminution in value of the Kia as a result of its status as a daily rental vehicle.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment for damages against Defendant, Santander Consumer USA, Inc., an Illinois corporation, together with interest.

## COUNT XI- ACTION FOR BREACH OF EXPRESS WARRANTY

181.    This is an action for breach of express warranty seeking damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

182.    Ms. Leach realleges and reaffirms the allegations contained in Paragraphs 1 through 91 above as if set forth hereat in full.

183.    From the various statements made by the Dealership, including the Prior Use Representation and the Daily Rental Representation, the Dealership made an express warranty, pursuant to Section 2-313 of the Uniform Commercial Code ("UCC"), by both affirmation of fact or promise and by description of the history of the Kia ("Kia Express History Warranty").

184.    As evidenced by the above, the Dealership has breached the Kia Express History Warranty.

185.    As a direct and proximate result of the breach of the Kia Express History Warranty, Ms. Leach has been damaged.  The damages of Ms. Leach include, but are not necessarily limited to, the diminution in the value of the Kia.

186.    Ms. Leach has performed all conditions precedent to the filing of the instant action.

WHEREFORE, Plaintiff, Eula Mae Leach, an individual, demands judgment for damages against Defendant, Santander Consumer USA, Inc., an Illinois corporation, together with interest and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs, Eula Mae Leach, pursuant to Rule 1.431, Florida, Rules of Civil Procedure, demands a trial by jury of all issues so triable.

_/s/ Robert W. Murphy_____
ROBERT W. MURPHY, ESQ.
Florida Bar No.: 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 763-8660
Telephone: (954) 763-8607
E-Mail:
rwmurphy@lawfirmmurphy.com

_Counsel for Plaintiff_